


## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| JONATHAN C., by his parents and<br>next friends Tammy and Fred C.,<br>    *Plaintiff,* | §<br>§<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 9:05-CV-43 |
| ALBERT HAWKINS, in his official<br>capacity as COMMISSIONER, TEXAS<br>HEALTH AND HUMAN SERVICES<br>COMMISSION,<br>    *Defendant.* | §<br>§<br>§<br>§<br>§<br>§ | |

## MEMORANDUM OPINION
## IN SUPPORT OF ORDER ON SUMMARY JUDGMENT

The Court, having granted the Plaintiffs's Motion for Summary Judgment [Clerk's doc. #23]

and denied the Defendant's Motion to Dismiss and for Summary Judgment [Clerk's doc. #22], now

issues this memorandum in support of its *Order on Motions for Summary Judgment* [Clerk's doc.

#47].

### A.    Background Facts and Issues Presented by Parties

<u>Facts and Arguments</u>

The Court will present the following facts made the basis of this case.  The factual

background is derived from the motions and pleadings submitted by the parties.  Some of the facts

are undisputed; others constitute findings of facts which resolve factual disputes between the parties.

The Court also notes that this is a case best determined by the resolution of the legal issues (a fact

-1-

which the parties seemed to concede throughout the development of the litigation), and thus the Court makes its determination based upon on the briefs presented.

Plaintiff, Jonathan C. ("Plaintiff"), is a young boy with significant, multiple disabilities and chronic health conditions. Jonathan C. was born July 31, 1997, and is, accordingly, currently nine years old. Jonathan's parents, Tammy and Fred C., filed this lawsuit on their minor son's behalf. According to the *First Amended Complaint*, Jonathan and his parents reside together in Diboll, Angelina County, Texas[1], which is where he receives his Medicaid-funded nursing services. Those Medicaid-funded nursing services are the basis of this litigation.

Defendant, Albert Hawkins ("Defendant"), is the Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"). Here, Mr. Hawkins represents the HHSC in his official capacity as Commissioner. In Texas, the HHSC is the single state agency for the Texas Medicaid Program. *See* TEX. GOV'T. CODE § 531.021.[2]   The HHSC contracts with the Texas Medicaid Healthcare Partnership ("TMHP") for the administration and prior authorization of the Medicaid benefits at issue in this case.

---

[1] Angelina County is located within the Lufkin Division of the United States District Court for the Eastern District of Texas. *See* 28 U.S.C. § 124(c)(6).

[2] "(a) The commission is the state agency designated to administer federal medical assistance funds. (b) The commission shall:  (1) plan and direct the Medicaid program in each agency that operates a portion of the Medicaid program, including the management of the Medicaid managed care system and the development, procurement, management, and monitoring of contracts necessary to implement the Medicaid managed care system; (2) adopt reasonable rules and standards governing the determination of fees, charges, and rates for medical assistance payments under Chapter 32, Human Resources Code, in consultation with the agencies that operate the Medicaid program; and (3) establish requirements for and define the scope of the ongoing evaluation of the Medicaid managed care system conducted in conjunction with the Texas Health Care Information Council under Section 108.0065, Health and Safety Code." TEX. GOV'T CODE § 531.021(a)-(b). *See also* TEX. GOV'T. CODE § 531.001 (defining "commission" as the Health and Human Services Commission).

Jonathan suffers from several health conditions and disabilities which necessitate the private duty nursing ("PDN") services at issue in this case.[3]  According to the Plaintiff, he suffered a ruptured brain aneurysm when he was an infant.  As a result of the ruptured aneurysm, Jonathan has been diagnosed with cerebral palsy, microcephaly, hydrocephaly, cortical blindness, marked dysphagia, global developmental delay, encephalopathy, a seizure disorder, and severe reflux.

The detailed and profound medical history leading to Jonathan's disabilities are further described in his pleadings and motion for summary judgment, and through his mother's testimony and other witnesses adduced at the November 22, 2004, fair notice hearing.  *See Exhibit 30 to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* (audio from the fair notice hearing) [Clerk's doc. #s 32, 34].  In summary, according to the Plaintiffs, Jonathan suffers from seizures, necessitating assistance and monitoring; he is at risk for aspiration (accidental inhaling of a substance, such as food or mucus, into the airway) and his airway must be kept clear; he is unable to move any of his limbs as intended because of his spastic quadriparetic cerebral palsy; relatedly, he cannot stand, walk, sit without assistance, change position independently or accomplish any activities of daily living, such as feeding himself, bathing, using the bathroom, and dressing; he can only see light, due to his cortical blindness; he is non-verbal;  he cannot eat by mouth and receives all of his nutrition and hydration through a gastrostomy tube;  he has a shunt implanted in his head to help drain fluid from his brain to his abdomen; and because Jonathan is on immune precaution, he receives therapies and schooling at home, and does not leave the house during cold

---

[3] The Defendant objects to the "facts" presented by Plaintiff relating to his medical condition.  *See Defendant's Response to Plaintiff's Motion for Summary Judgment* [Clerk's doc. #28].  The Court does not utilize them for purposes of legal determination and does not adopt them as its own factual findings, as Jonathan's medical necessity for PDN services is not at issue in the motions before the Court.  However, the undersigned does find Jonathan's medical condition relevant as background information to draw context to the Plaintiff's situation, his past experience with Medicaid, and why he applies for Medicaid benefits.  Further, the Defendant did not produce any summary judgment evidence directly contradicting Jonathan's account of his own medical condition.

and flu season to avoid infection.  Because of these conditions, Jonathan has a medical need for private duty nursing services.

It is undisputed that Jonathan was determined eligible for Medicaid in April 2000, and that he has remained eligible for Medicaid since that date.  Since becoming eligible, he has received private duty nursing services through Texas Medicaid.

There is a complex and detailed administrative process through which Medicaid recipients are required to submit requests for PDN services such as those requested and received by Jonathan C.  The Court will address that process as it becomes relevant during the legal analysis, *supra*.  For purposes of this litigation, at issue are Jonathan's request for prior authorization for 80 hours per week of PDN services for the September 8, 2004, to November 7, 2004, and November 7, 2004, to January 5, 2005, authorization periods (initial requests for prior authorization of PDN services are considered in sixty (60) day service periods).  Both requests were denied by TMHP.

Specifically, TMHP authorized the PDN services, but at a reduced amount of hours.  It did not approve the 80 hours per week as requested for the September 8, 2004, to November 7, 2004, period.  In its notice letter ("denial notice") dated September 22, 2004, TMHP denied Jonathan's request for prior authorization of 80 hours per week of private duty nursing services for the September 8, 2004 to November 7, 2004 authorization period, and instead authorized the reduced amount of 72 hours per week for September 23 to September 29, 2004, with a further reduction to 65 hours per week for September 30 to November 6, 2004.  *See Exhibit 4 to Plaintiff's Motion*.

On September 27, 2004, Jonathan's mother, Tammy, requested a fair hearing on his behalf after receiving the September 22, 2004, denial notice.  In her letter dated October 22, 2004, hearing officer Sara Goodman set the fair hearing for November 2, 2004.  *See Exhibit 4 to Plaintiff's Motion*.

-4-

Hearing officer Goodman's letter stated that the "basis for the hearing is the modification [denial] of the private duty nursing hours beginning September 8, 2004 through November 7, 2004 for Jonathan C.[] as stated in the letter sent to you by the Texas Medicaid and Healthcare Partnership (TMHP) dated September 22, 2004," and that this hearing could only address this specific issue. *See Exhibit 4 to Plaintiff's Motion.*

Jonathan's attorney withdrew Jonathan's request for the fair hearing that was scheduled for November 2, 2004. The Plaintiff states that he did so because, among other things, there would be no remedy the hearing officer could award Jonathan, even if he prevailed at the hearing. According to Jonathan, there was no remedy available with the hearing set for November 2, 2004, because the hearing officer did not have time to render her decision before November 7, 2004, the last day of the prior authorization period at issue. He further states that this is because the Texas Health and Human Services Commission hearing officers have no authority, and can order no relief, beyond the prior authorization period at issue. Of course, this "no remedy" characterization is disputed by the Defendant.

Next, on or about October 25, 2004, Jonathan submitted his request for prior authorization of 80 hours per week of private duty nursing services for the next authorization period, November 7, 2004 to January 5, 2005. In its denial notice dated November 1, 2004, TMHP denied Jonathan's request for prior authorization of 80 hours per week of private duty nursing services for the November 7, 2004 to January 5, 2005 authorization period, and instead authorized the reduced amount of 68 hours per week. *See Exhibit 6 to Plaintiff's Motion.* On the same day the denial notice was issued, November 1, 2004, Jonathan's mother requested a fair hearing on Jonathan's behalf. In her letter dated November 3, 2004, hearing officer Goodman set the hearing for November 17,

-5-

2004.  The hearing official's letter stated that the "basis for the hearing is the modification of the private duty nursing hours beginning November 7, 2004 through January 5, 2005 for Jonathan C. [] as stated in the letter sent to you by the Texas Medicaid and Healthcare Partnership (TMHP) dated November 1, 2004," and that this hearing could only address this specific issue.  *See Exhibit 7 to Plaintiff's Motion*.  At the request of Jonathan's attorney, the November 17, 2004 fair hearing was rescheduled to November 22, 2004.  The fair hearing took place on November 22, 2004.  Witnesses testified on behalf of both Jonathan and TMHP.

On December 10, 2004, hearing officer Goodman issued her decision.  The hearing official stated in her Order that, as designee of the Executive Commissioner, "[h]aving received and considered the evidence submitted in this matter, is of the opinion that the preponderance of the evidence establishes that the decision of the Texas Medicaid Healthcare Partnership (TMHP) is not in accordance with applicable law and policy."  "Therefore, the decision of TMHP is overturned," and "TMHP is ordered to authorize 80 hours of PDN for Jonathan C. [] for the period November 7, 2004, to January 2005 . . . ."  *See Exhibit 9 to Plaintiff's Motion*.  In support, the hearing officer made several conclusions of law and findings of fact.  This includes the statement that:

> TMHP's modification of PDN hours from the 80 hours per week to 68 hours per week for the period November 7, 2004, to January 5, 2005 for Jonathan [C.] is not in accordance with applicable law and policy.  . . . .  The weight of the evidence clearly supports that Jonathan's medical problems and the resulting nursing care needs have remained essentially constant.  There has been no change in the skilled nursing interventions or in the complexity or intensity and complexity of the care Jonathan requires.  Jonathan has received 80 hours of PDN per week for several years and, in the past, TMHP has authorized this number of hours for Jonathan.  The testimony and documentation in the file confirm that there has been no change in Jonathan's health status, and that his stability could be attributed to the fact that he has consistently received 80 hours of PDN. . . .

> TMHP has not met the burden of proof to support their action to reduce the PDN hours. . ... .

*See Exhibit 9 to Plaintiff's Motion*, at p.13.

The hearing officer issued her decision upholding 80 hours per week of private duty nursing services on December 10, 2004. Pursuant to the hearing officer's Order, TMHP authorized 80 hours per week of private duty nursing services for Jonathan on December 15, 2004. *See Exhibits 14 and 20 to Plaintiff's Motion*. He received the reduced amount of benefits from November 7, 2004, until December 10, 2004, when the hearing official issued her decision. As such, Jonathan states that he did not begin receiving 80 hours per week of PDN until some 85 days after he first requested a hearing. *See Plaintiff's Motion*. On January 5, 2005, he had submitted his extension request for the authorization period of January 6, 2005, to March 6, 2005, the first authorization period following Ms. Goodman's hearing decision. *See Exhibit 13 to Plaintiff's Motion*. TMHP again denied Jonathan's request for prior authorization of 80 hours per week of private duty nursing services for the January 6, 2005 to March 6, 2005 authorization period. TMHP instead authorized 80 hours per week for January 6 to January 19, 2005, then 76 hours per week for January 20 to February 2, 2005, 72 hours for February 3 to February 16, 2005, and 70 hours per week for February 17 to March 6, 2005. *See Exhibit 10 to Plaintiff's Motion*. Thus, on January 19, 2005, his benefits were again reduced. As for the nursing hours that were unlawfully reduced from the date of the action to the date of the hearing decision, those hours were "lost," and could not be restored, unless the beneficiary paid for the services himself while waiting for the hearing decision (which Jonathan did not). *See Plaintiff's Motion*.

Based upon these facts, Jonathan accordingly contends that under Texas Medicaid's fair hearing system, he could have continued to request fair hearings, and even win those hearings, yet

his nursing services would have been denied or reduced until the hearing decisions were rendered, and, at best, he might have had a few days or weeks of services restored, if any at all, and Texas Medicaid could have denied each and every subsequent request for prior authorization periods thereafter.   He argues that, faced with this "unfair" hearing system and no foreseeable relief as to his ongoing requests for PDN services under that system, Jonathan had little choice but to file the present action in federal court.

Accordingly, Jonathan filed this proceeding on February 24, 2005.  His suit is based upon 42 U.S.C. § 1983[4], alleging the deprivation of rights guaranteed by the federal Medicaid Act and the United States Constitution.  *See First Amended Complaint* [Clerk's doc. #37].  Specifically, he contends that Defendant has deprived, and continues to deprive him, of his entitlement to all covered, medically-necessary private duty nursing services without due process of law, in violation of the Medicaid Act and its implementing regulations by (a) failing to provide him written notice of his right to a hearing at least 10 days before the date of the intended action, (b) failing to state the reasons for the intended action;  (c) failing to explain the circumstances under which services are continued if a hearing is requested;  (d) failing to continue or maintain his private duty nursing services pending the hearing decision; (e) failing to comply with the decision of the Hearing Officer; and (f) restricting the authority of the hearing officer and the effect of her decision to the prior authorization period at issue.  *Id.* at pp.  15-16.  Jonathan accordingly seeks injunctive relief enjoining the Defendant from depriving Jonathan of his entitlement to all medically-necessary

---

[4]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983.

private duty nursing services without due process of law, and requests that the Court issue a declaratory judgment accordingly. He also requests attorney fees pursuant to 42 U.S.C. § 1988.

The parties filed cross-motions for summary judgment, each setting forth their arguments and evidence in support. The issues have been thoroughly briefed before the Court, and the Court issued a short memorandum order on September 14, 2006, granting summary judgment in favor of the Plaintiff and denying the Defendant's motion. The specific arguments and issues presented by the parties will be addressed at length, *infra*, as they become pertinent to the legal analysis contained herein.

## B.    Discussion

General Summary Judgment Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quoting Rule 56(c)); *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) (citations omitted). The movant's burden is only to point out the absence of evidence supporting the non-movant's case. *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992). When the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In considering a motion for

summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505

(1986). In order to prevail on its motion, it is therefore the parties' burden to establish that there is

an absence of a genuine issue of material fact on an essential element of a claim. *See Little v. Liquid

Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

When both parties file motions for summary judgment[5], as here, the court applies the same

standards of review. *Taft Broadcasting Co. v. United* States, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO

Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983), *cert. denied*, 469 U.S. 1215 (1985);

*see also, e.g., Foulston Siefkin LLP v. Wells Fargo Bank of Tex., N.A.*, 465 F.3d 211 (5th Cir. 2006).

The role of the court is to "rule on each party's motion on an individual and separate basis,

determining, in each case, whether a judgment may be entered in accordance with the Rule 56

standard." *Towne Mgmt. Corp. v. Hartford Accident & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md.

1985); *see also Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*,

410 F.3d 304, 309 (6th Cir. 2005).  When cross-motions for summary judgment demonstrate a basic

agreement concerning what legal theories and material facts are dispositive, they "may be probative

of the non- existence of a factual dispute." *A.T. Massey Coal Co. v. Barnhart*, 381 F. Supp. 2d 469,

479 (D. Md. 2005) (citing *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)).

---

[5] The Defendant submitted his motion both as one for dismissal under Federal Rule of Civil Procedure 12(b)(6) and for summary judgment under Federal Rule of Civil Procedure 56.  The parties agree that their motions present issues of law, and this Court is considering matters outside of the pleadings in determining those issues.  Accordingly, the Court treats Defendant's motion as one for summary judgment rather than for dismissal on the pleadings under the Rule 12(b)(6) standard. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (if a court considers materials outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)) (Citations omitted).

Legal Framework

i.    The Federal Medicaid Act

The federal Medicaid Act, Title XIX of the Social Security Act, was established by Congress

as a cooperative federal and state medical assistance program purposed to enable states, through

federal appropriations, to furnish medical assistance. *See* 42 U.S.C. § 1396. The Medicaid Act is

specifically designed to "to furnish (1) medical assistance on behalf of families with dependent

children and of aged, blind, or disabled individuals, whose income and resources are insufficient to

meet the costs of necessary medical services, and (2) rehabilitation and other services to help such

families and individuals attain or retain capability for independence or self-care . . . ." *Id.*

States electing to participate in the Medicaid program must comply with certain requirements

imposed by the Act and regulations of the Secretary of Health and Human Resources. *See S.D v.*

*Hood,* 391 F.3d 581, 586 (5th Cir. 2004) (citing *Evergreen Presbyterian Ministries, Inc. v. Hood,* 235

F.3d 908, 915 (5th Cir. 2000) ("The [Medicaid] program is voluntary; however, once a state chooses

to join, it must follow the requirements set forth in the Medicaid Act and in its implementing

regulations")). The Secretary of Health and Human Services has delegated his federal administrative

authority to the Centers for Medicare and Medicaid Services ("CMS")[6], an agency within the

Department of Health and Human Services that administers the Medicaid Act. *See id.* (Citing

*Louisiana v. United States Dep't of Health and Human Servs.,* 905 F.2d 877, 878 (5th Cir. 1990)).

To qualify for federal assistance under the Medicaid Act, a state must submit a plan to the

Secretary for medical assistance which contains a comprehensive statement describing the scope of

---

[6] Prior to July, 2001, CMS was formerly known as the Health Care and Financing Administration ("HFCA").
Its name changed to CMS under a Department of Health and Human Services Reorganization Order on July 5, 2001.
*See S.D. v. Hood,* 391 F.3d at 586 n.2.

the state's Medicaid program. *See S.D. v. Hood*, 391 F.3d at 586 (citing Section 1396a and 42 C.F.R. § 430.10). This plan must be approved by the Secretary and is subject to several requirements set forth in Section 1396a, including the requirement that it provide "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." *See* 42 U.S.C. § 1396a.

The federal Medicaid Act regulations require that a state must put in place hearing and grievance procedures allowing Medicaid beneficiaries to challenge the state agency's action with regard to their Medicaid benefits. *See generally* 42 C.F.R. § 431.205. An "action" by the agency includes a "termination, suspension, or reduction of Medicaid eligibility or covered service." 42 C.F.R. § 431.201. 42 C.F.R. §§ 431.205-214 govern the fair hearing process and required notices for the fair hearings. The regulations further require that the state's Medicaid fair hearing system must meet the due process standards set froth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), along with other requirements enunciated in the regulations. 42 C.F.R. § 431.205(d).

Under the federal regulations, the state agency must also provide beneficiaries with written notice of their right to a hearing. 42 C.F.R. § 431.206(b). The written notice must contain, among other things: a statement of what action the agency intends to take; the reasons for the intended action; the specific regulations that support, or the change in federal or state law that requires, the action; and an explanation of the circumstances under which services are continued if a hearing is requested. 42 C.F.R. § 431.210. As for the timing of the written notice of the right to a fair hearing, the state agency "must mail a notice at least 10 days before the date of action, i.e. ten days before the "termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201 and 431.211. There are limited exceptions in which the agency may mail the notice later

than the date of action, including, among others, death of a recipient, the recipient no longer wants

to receive benefits, the recipient's whereabouts are unknown, and the recipient has been accepted

for Medicaid services by another jurisdiction. 42 C.F.R. § 431.213. The exceptions in Section

431.213 appear to be inapplicable in this case.

Finally, if the agency mails the ten day notice and the recipient requests a hearing before the

date of action, the agency may not terminate or reduce services pending the hearing decision, unless

"it is determined at the hearing that the sole issue is one of Federal or State law or policy; and the

agency promptly informs the recipient in writing that services are to be terminated or reduced

pending the hearing decision." 42 C.F.R. § 431.230(a).

ii.     Texas Medicaid

At the heart of this case is whether the Texas Medicaid fair hearing process complies with

the Federal Medicaid Act and corresponding regulations, outlined in detail *supra*. Accordingly, the

Court must also outline, for comparison, the fair hearings process implemented by Texas Medicaid.

The procedures utilized by the HHSC and the TMHP in administering Texas Medicaid are

codified in the Texas Administrative Code. *See* 1 TEX. ADMIN. CODE §§ 357.1 *et seq.* (governing

medical fair hearings). The procedures are referred to as Texas Medicaid's Uniform Fair Hearing

Rules. Texas Medicaid is implemented by the HHSC. *See* TEX. GOV'T CODE § 531.021. As the

Court already stated, the HHSC contracts with TMHP for the administration and prior authorization

of the Medicaid benefits at issue in this case.

As the Plaintiff notes in his motion, the Uniform Fair Hearing Rules do echo the federal

requirements set forth by the federal Medicaid Act and the federal regulations. Under 1 TEX. ADMIN.

CODE § 357.1(a)(1), an opportunity for a fair hearing is required when the operating agency (here,

HHSC) or its designee (TMHP) takes action to suspend, terminate or reduce services, including a denial of a prior authorization request for Medicaid-covered services. *See also* 1 TEX. ADMIN. CODE § 357.3(1)(A) (defining "action.")

The Court already discussed the federal regulations' requirement that advance notice of an agency's action is required by mailing the notice at least ten days before the date of action. *See* 42 C.F.R. 431.211. The Uniform Fair Hearing Rules provide an exception to this by stating that the operating agency or its designee will instead mail written notice to an individual *at the time of action* if the action is a denial of Medicaid or program eligibility or denial of a prior authorization request. *See* 1 TEX. ADMIN. CODE § 357.5(b)(1) (emphasis added). This provision applies in Jonathan's case, as TMHP denied his prior authorization requests for the full 80 hours of PDN services for the authorization periods at issue.

The Texas Medicaid fair hearing rules further state that the operating agency or its designee has no obligation to begin services requiring prior authorization before a hearing decision is rendered. 1 TEX. ADMIN. CODE § 357.7(e). Additionally, if the action is *other than* a denial of Medicaid program eligibility or a *denial of a prior authorization request* and a request for hearing is received before the date of action, the action will not be taken and services will be continued until a final decision is rendered following a fair hearing. 1 TEX. ADMIN. CODE § 357.7(a) (emphasis added). In other words, under the Texas fair hearing rules, in the event of a denial of a prior authorization request, the agency or its designee is not required to begin or maintain an individual's requested benefits until the hearing officer issues a final decision.

The state agency and its designee must allow the individual to request a standard fair hearing within ninety (90) days from the date the notice of action is mailed. 1 TEX. ADMIN. CODE § 357.5(d);

*see also* § 357.3 (defining "standard fair hearing)". Once the beneficiary requests the fair hearing, the agency must conduct the hearing and issue a decision (through the hearing official) within ninety (90) days of the request (unless waived by the beneficiary in writing). 1 TEX. ADMIN. CODE §§ 357.3(7)(B), 357.29(d)(1); *see also* 42 C.F.R. § 431.244(f) (same ninety (90) day requirement under federal law).

The hearing officer's decision is considered the final administrative decision of the agency. 1 TEX. ADMIN. CODE § 357.305(a). However, an individual may challenge the decision of the hearing officer by mailing a request for *administrative review* within 30 days of the date of the hearing officer's decision to the appropriate regional attorney. 1 TEX. ADMIN. CODE § 357.305(b) (emphasis added). Accordingly, pursuant to Texas' medical fair hearing rules, there is no process for judicial review of a hearing officer's final decision to deny or reduce benefits.

iii.    Issues and Analysis

As discussed above, under the Texas fair hearing rules, in the event of a denial of a prior authorization request, the agency or its designee is not required to begin or maintain an individual's requested benefits until the hearing officer issues a final decision. According to Jonathan, therein lies the problem. He contends that by denying him advance notice of denial of his request, Texas Medicaid denies him his right to maintain or continue those benefits pending the hearing decision. Under Title 1 of the Texas Administrative Code, Sections 357.5 and 357.7, the agency is not obligated to notify him at least ten (10) days prior to the adverse action or obligated to maintain his benefits pending the outcome of the fair hearing. Jonathan argues that this runs afoul of the federal Medicaid regulations because they require that the agency mail the notice ten (10) days prior to the adverse action and that the agency maintain the benefits or services if a hearing is requested after

receipt of the notice. *See* 42 C.F.R. §§ 431.211 and 431.230.  There is no exception in the federal regulations such as the exception for not providing prior authorized services pending a hearing decision as set forth in the Texas Medicaid fair hearing rules.  Stated differently, the Texas Medicaid fair hearing rules carve out an exception to the maintenance of services that is not promulgated (or, as Jonathan argues, allowed) in the federal Medicaid Act.

Also at the heart of Jonathan's motion is the fact that beneficiaries like himself cannot practically receive relief under the fair hearing rules.  This is because of the timelines implemented by TMHP and the fair hearing rules.  TMHP requires prior authorization for PDN services for sixty (60) day periods.  The summary judgment evidence presented by both parties establishes that even if a beneficiary prevails when the hearing officer issues her decision, a decision granting the requested benefits is not retroactive and the Texas Medicaid  fair hearing rules do not require the agency to maintain benefits in the interim period between the denial of benefits and the issuance of the hearings officer's decision.  Jonathan therefore argues that under these procedures, he may never receive the requested benefits to which he is entitled because the agency can continue to deny benefits for each authorization period, considering itself not bound by decisions related to prior authorization periods and operating under rules which do not require the maintenance of benefits until a final hearing decision is issued.  This all also happens during a ninety-day time period, during which the sixty day prior authorization period may expire and the beneficiary must renew his request for benefits for the next authorization period, also subject to denial, without retroactive relief or continuous benefits pending a final decision.  *See Texas Medicaid Provider Procedures Manual ("TMPPM"), submitted as an exhibit to both motions for summary judgment, at § 40.4.10.5, at 40-67, 40-68.*

-16-

In contrast, the Defendant requests that the Court dismiss the Plaintiff's claims and enter judgment in his favor because the Texas Medicaid notice and fair hearing rules implemented by Defendant are lawful under the Medicaid Act. *See Defendant's Motion to Dismiss and for Summary Judgment.* Relatedly, Defendant also contends that he did not deprive Jonathan of any constitutional process he may have been due. The Defendant further argues that Jonathan's request(s) for prior authorization of PDN services were untimely and that he abandoned or waived any appeal of the Defendant's decision on his requests.

       a).     Cause of Action - Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then demonstrate that the violation was committed by someone acting under color of state law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-253 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48-50 (1988); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995)); *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights. *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759-760 (5th Cir. 1997) (citing *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996), *cert. denied*, 519 U.S. 818 (1996); *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992)). Section 1983 simply provides a remedy for the rights that it designates. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997), *cert. denied* 522 U.S. 1016 (1997). In other words, it is not an independent cause of action in itself because an underlying constitutional or statutory violation is a predicate to liability under Section 1983. *Id.* For a Plaintiff to recover, he must show that the Defendant deprived him of an

-17-

underlying right guaranteed to him by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

Often, Section 1983 claims involve many disputed issues and intricacies that a Plaintiff must prove or address before proceeding or prevailing. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004); *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). In this case, having read the parties' thorough briefs, the Court discerns that the only real issue for purposes of Jonathan's Section 1983 claim is whether the Defendant deprived him of his rights as guaranteed by the Due Process Clause of the United States Constitution and the federal Medicaid statute, 42 U.S.C. § 1396 *et seq.*

      b).    Constitutionality and Due Process: *Goldberg v. Kelly* and other case law

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. IV, § 1. In 42 U.S.C. § 1983, Congress has created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit": "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S. Ct. 2796, 2803, 162 L. Ed. 2d 658, 668 (2005) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)). Such entitlements are "'of course, . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or

-18-

understandings that stem from an independent source such as state law.'" *Id.* 125 S. Ct. 2796, 2803, 162 L. Ed. 2d 658, 669 (quoting *Paul v. Davis,* 424 U.S. 693, 709, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976)).

In *Goldberg v. Kelly* [7], the United States Supreme Court held that procedural due process under the Fourteenth Amendment requires that welfare recipients be afforded an evidentiary hearing before termination of benefits by welfare authorities. *Goldberg,* 397 U.S. at 261-62. The Court further concluded that a pre-termination, not post-termination, hearing was required to meet minimum procedural safeguards demanded by rudimentary due process, which included affording the recipient the opportunity to confront and cross-examine witnesses relied on by the welfare department, to retain an attorney if he so desired, and to present oral evidence to an impartial decision maker, whose conclusion must rest solely on the legal rules and evidence adduced at the hearing. *Id.* at 270-71.

This Court concludes that the Texas Medicaid fair hearing system, as it applies to Jonathan, clearly runs afoul of the due process protections set forth in *Goldberg.* Jonathan's benefits were reduced[8], i.e. terminated in part, before he received an administrative hearing before the hearings officer. Even after his hearing and the issuance of a favorable decision ordering the restoration of his benefits, Jonathan still did not receive the benefits to which he was entitled because the authorization period began anew and the process began again. At this point, Jonathan was in the same position as he was prior to the hearing - his benefits were again reduced without a fair hearing

---

[7] 397 U.S. 254 (1970).

[8] Under the federal regulations, an agency "action" triggering the fair hearing regulations includes a "termination, suspension, or *reduction* of Medicaid eligibility or covered service." 42 C.F.R. § 431.201 (emphasis added). *See also* 42 C.F.R. § 431.205.

for that authorization period. The TMHP's own exception to the federally required maintenance of services pending the outcome of a hearing is not in accordance with *Goldberg* or the Federal Medicaid Act.  Its notice procedures also fall short of the required process due to Jonathan. *Goldberg* simply states that "the pre-termination hearing has one function only: to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." *Id.* at 267.  Here, Jonathan was not provided with such a hearing before his benefits were reduced.  The hearing came after the reduction and still did not afford him any sustainable relief, even though the hearing officer found in his favor.  Accordingly, Texas Medicaid did not comply with *Goldberg*, as it is required to do by 42 C.F.R. § 431.205.

The Defendant argues that Jonathan's case is inapposite to *Goldberg* because the denial in question here was for the authorization of payment for future benefits, not the termination of existing benefits. *See Defendant's Motion to Dismiss and for Summary Judgment*, at p.25.  The Defendant then contends that individuals requesting prior authorization of services—whether for the first time or subsequently—have no entitlement to any services beyond the authorized period, citing an HCFA[9] letter dated November 3, 1994. Defendant finally contends that Jonathan has no protectable interest in future unauthorized services, and certainly no protectable interest in a certain number of hours of such services, before there has been a determination of medical necessity for the period in question.

First, the Court must address the distinction that the Defendant attempts to make between existing and future benefits. Prior to the authorization period at issue, Jonathan had been receiving

---

[9] As the Court already discussed, the Health Care and Financing Administration ("HFCA") is the former federal agency responsible for administering the Medicaid program.  Its name changed to CMS in 2001.  Because the HFCA is the federal agency formerly responsible for Medicaid, the Defendant argues that the Court should afford deference to its interpretation (stated in the cited "letters") of the Medicaid Act.

the full 80 hours of PDN per week for four and one half years.[10]  *See Findings of Fact of Sara Goodman, Fair Hearing Official, Exhibit 9 to Plaintiff's Motion for Summary Judgment*; *see also Exhibit 30 to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* (audio from the fair notice hearing).  According to the evidence, he had been receiving the full 80 hours until the authorization periods at issue in late 2004 and 2005.  Thus, from authorization period to authorization period, his requests had been granted by TMHP until the periods at issue here.

The Court understands the sixty (60) day limitation imposed by the Defendant upon the time period for which beneficiaries may receive PDN services before having to re-apply.  There is clearly a need for updated medical information, necessitating the temporal element of the authorization periods.  This concern is even codified under the regulations: a Medicaid agency may "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."  42 C.F.R. § 440.230(d).  A prior authorization system is one of the accepted utilization control procedures that can be employed as a limitation on the service provided to medical recipients.  *Ladd v. Thomas*, 962 F. Supp. 284, 294 (D. Conn. 1997) (quoting *Jeneski v. Myers*, 163 Cal. App. 3d 18, 209 Cal. Rptr. 178, 187 (Cal.App. 2d Dist. 1984)).

It is, therefore, undisputed that Texas Medicaid acts well within the scope of federal law by implementing a prior authorization system for beneficiaries requesting PDN services.  At the same time, it is also well-settled that some form of hearing is required before an individual is deprived of

---

[10] As already discussed, "initial requests" for prior authorization of private duty nursing services are considered for sixty (60) days of service. *See Texas Medicaid Provider Procedures Manual ("TMPPM"), submitted as an exhibit to both motions for summary judgment, at § 40.4.10.5.* Requests for prior authorization of PDN after the initial request, called "extension requests," are usually also for 60 days, unless the beneficiary meets additional criteria for a four or six month authorization. *Id.* For the relevant time period, Jonathan was required to request prior authorization of his nursing services every 60 days, as his request for a four or six month authorization was denied. *See Exhibit 20 to Plaintiff's Motion for Summary Judgment*, Deposition of Julia Stewart, at p. 29, ll. 2-7. Here, Jonathan was seeking an extension request, as he had been receiving nursing services through Texas Medicaid for years, as stated.

a property interest, such as those benefits. *See Mathews v. Eldrige*, 424 U.S. 319, 333 (1976). As recognized in *Goldberg*, termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. *Goldberg*, 397 U.S., at 264. Therefore, individuals such as Jonathan are in the grave situation of losing welfare assistance upon which they rely for subsistence and, in some cases, existence, until the agency has made its determination. This is especially dire for recipients such as Jonathan who have consistently relied upon, and been entitled to, the requested benefits for years prior to the unfavorable reduction of benefits. The desperation of his situation (exactly the kind that the *Goldberg* decision sought to prevent) is bolstered by the fact that the agency's own hearing official found that he was and had been entitled to the requested benefits.

The Defendant further contends that Jonathan's situation is distinguishable from *Goldberg* in that his due process rights have not been violated because he is not entitled to services that he has not yet been authorized to receive; i.e. he does not have a protectable property interest in the requested future PDN services. The Court finds this to be a distinction without a difference. The Court further finds Defendant's interpretation is not supported by the applicable law. Despite Defendant's argument to the contrary, Jonathan clearly has a property interest in his Medicaid benefits, to which the requirements of due process attach.

Courts view welfare entitlements more like "property", rather than a "gratuity", and such benefits are a matter of statutory entitlement for persons qualified to receive them. *See Goldberg*, 397 U.S. at 262 n.8. Therefore, under the law, beneficiaries do, in fact, have a constitutionally protected property interest in Medicaid benefits. *See id. See also Ladd v. Thomas*, 962 F. Supp. 284, 289 (D. Conn. 1997); *Easley v. Arkansas Dep't of Human Serv.*, 645 F. Supp. 1535, 1545 (E.D. Ark. 1986).

-22-

The relevant federal regulation clearly states that due process protections are to be afforded "to any person whose claim for assistance is denied or not acted upon promptly." *See* 42 C.F.R. § 431.200; *see also Easley v. Arkansas Dep't of Human Serv.*, 645 F. Supp. 1535, 1541 (E.D. Ark. 1986). The regulation makes no mention of "current" versus "future" benefits. In fact, case law bolsters this Court's determination that Defendant is erroneous in his contention that, for purposes of due process, Jonathan has no entitlement to procedural due process when requesting the continuation of PDN services that he has not yet been authorized to receive.

In *Ladd v. Thomas*, 962 F. Supp. 284, (D. Conn. 1997), the Court considered whether the Connecticut State Department of Social Services' policy for processing requests for prior authorization of durable medical equipment (DME) violated federal Medicaid and constitutional law. The Court held that whenever the Defendant effectively reduced the benefits requested by the Plaintiffs, the Plaintiffs were statutorily entitled to notice that this reduction has been made and notice of the right to appeal the decision to reduce the request. *Id.* at 293. This holding, of course, applied to the Plaintiffs' requests for the Defendant to pay for the rental of DME in the *future*. *See id.* at 288. ("[Defendant]" does not provide notice, including notice of their appeal rights, directly to Medicaid recipients in several types of situations," including when [Defendant] approves a period of rental for DME that is shorter than the period requested.). Accordingly, in the *Ladd* case, Judge Arterton held that the Defendant was in violation of federal law by failing to provide notice to Medicaid beneficiaries' that a request for prior authorization has been approved in modified [i.e. reduced] form, and that the failure to provide notice to Medicaid recipients of an opportunity for a fair hearing to challenge the decision did in fact violate federal law. *Id.* at 292, 295.

Additionally, in *Hamby v. Neel*, 368 F.3d 549 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit stated that a social security claimant has a property interest in benefits

for which he or she *hopes to qualify* and that the petitioner's *claim* to benefits gave him a protectable

property interest. *Id*. at 559 (emphasis added). Therefore, the Sixth Circuit held that under

Medicaid, which is codified in Title XIX of the Social Security Act, the beneficiaries had a property

interest in the state-provided benefits for which they hope to qualify. *Id.*

In construing the *Ladd* and *Hamby* decisions, the Court find those situations applicable to

the case at hand. Like the beneficiaries in those cases, Jonathan is requesting that TMHP provide

payment for benefits (PDN services) that he seeks to receive in the future. Despite the fact that the

plaintiffs had not yet been approved to receive the requested future benefits, the *Ladd* and *Hamby*

courts still concluded that they were entitled to notice and the opportunity for fair hearing under the

Due Process Clause. The Court reaches the same conclusion in Jonathan's case. In fact, every

circuit deciding whether applicants for benefits (in contradistinction to current recipients for benefits)

possess a due property interest protected by the Due Process Claus of the Fourteenth Amendment

has answered in the affirmative. *Kapps v. Wing*, 404 F. 3d 105, 115 (2d Cir. 2005) ("every circuit

to address the question. . has concluded that applicants for benefits, no less than current benefits

recipients, may possess a property interest in the receipt of public welfare entitlements") (citing *Kelly*

*v. Railroad Ret. Bd.,* 625 F.2d 486, 489-90 (3d Cir. 1980); *Mallette v. Arlington County Employees'*

*Supplemental Ret. Sys. II,* 91 F.3d 630, 637-640 (4th Cir. 1996); *Flatford v. Chater,* 93 F.3d 1296,

1304-05 (6th Cir. 1996); *Hamby v. Neel,* 368 F.3d 549, 557-59 (6th Cir. 2004); *Daniels v. Woodbury*

*County,* 742 F.2d 1128, 1132-33 (8th Cir. 1984); *Foss v. National Marine Fisheries Serv.,* 161 F.3d

584, 588 (9th Cir. 1998); *Griffeth v. Detrich,* 603 F.2d 118, 121-22 (9th Cir. 1979); *Ward v.*

*Downtown Dev. Auth.,* 786 F.2d 1526, 1531 (11th Cir. 1986); *Raper v. Lucey,* 488 F.2d 748, 752 (1st

Cir. 1973) (finding "no legitimate basis" for distinguishing between applying for a *liberty* "benefit"

and having that benefit withdrawn)).

-24-

Accordingly, finding guidance in the precedent set forth *supra*, the Court concludes that Jonathan possesses a property interest in the benefits (the future PDN services) which he requested. He is therefore entitled to the due process protections imposed by the federal Medicaid statute and regulations and *Goldberg v. Kelly*. Texas Medicaid's notice procedure and fair hearing system deprived him of that due process.

The Medicaid program was established to provide benefits to poor and/or disabled individuals who are burdened either financially or physically, such as Jonathan. In order to adequately protect the interests of Jonathan, for whom the Medicaid program exists, the Court is of the opinion that it is absolutely necessary that Jonathan be afforded notice that his request has been denied for a specific reason and that he be entitled to challenge that decision. *See, e.g., Easley v. Arkansas Dep't of Human Serv.*, 645 F. Supp. at 1544. The Court finds Jonathan's situation to be problematic and violative of the spirit of the Medicaid Act when a beneficiary such as him has been receiving the same amount of medially necessary, physician-directed benefits for years and then is suddenly denied those benefits without recourse before they are reduced or terminated without notice or hearing. This contravenes the clear directive of the Medicaid Act and basic due process rights delineated in *Goldberg v. Kelly*, specifically the requirements that beneficiaries receive the benefits to which they are entitled, that the beneficiary is entitled to due process when the state denies or reduces the requested benefits, and that those benefits be maintained until a fair hearing is held and a decision reached. *See Ladd*, 962 F. Supp. at 292 (quoting *Catanzano by Catanzano v. Dowling*, 847 F. Supp. 1070, 1083 (W.D.N.Y. 1994)).

The hearing official found that Jonathan's nursing care needs had remained constant, with no change in the skilled nursing interventions or in the care that Jonathan requires. *See Exhibit 9 to Plaintiff's Motion for Summary Judgment.* In fact, the hearing official found that Jonathan's stability

could be attributed to the fact that he had consistently received the 80 hours of PDN. *Id.* Even so, Jonathan received only the reduced amount of benefits from November 7, 2004, until December 10, 2004, when the hearing official issued her decision. Then, Jonathan only received the requested full 80 hours of PDN services from December 15, 2004, until January 19, 2005. On January 5, 2005, he had submitted his extension request for the authorization period of January 6, 2005, to March 6, 2005, the first authorization period following Ms. Goodman's hearing decision. However, Jonathan's request for the full 80 hours for that authorization period was again denied, and TMHP again only authorized him to receive the PDN services at a reduced amount. Thus, on January 19, 2005, his benefits were again reduced, despite the fact that (1) he had been receiving the full 80 hours for four and a half years prior; and (2) that the hearing official found that he was entitled to the full 80 hours and ordered TMHP to restore his benefits to the full 80 hours. Still, Jonathan only received the full 80 hours to which he was entitled for about a month before he was forced to begin the hearing process anew when his benefits were again reduced, in contravention of the hearing official's decision issued less than one month earlier.

All of this being said, the true problem is not necessarily with the merits of Jonathan's claim that he is entitled to the services; in fact, that is not the issue. Rather, Jonathan's rights were violated because he was not properly afforded the notice of the reduction of his benefits or the opportunity to challenge TMHP's decision while the benefits are maintained pending the fair hearing and ultimate decision. In short, beneficiaries such as Jonathan are subject to a cycle of denial of their benefits because even if the TMHP's decision is overturned and the hearing officer holds in favor of the beneficiary, the benefits have not been maintained and the authorization period will have expired or be near expiration by the time the favorable decision is issued. Based upon the reasons set forth *infra*, this framework violates the federal Medicaid Act and corresponding regulations in

that the failure to maintain and failure to provide advance notice of an adverse action in cases such as Jonathan's are not proscribed by federal law and in fact are in direct contrast to federal law, which requires maintenance of benefits and advance notice.

        c).    The Authority Cited by Defendant in Support of his Policies are Not Binding

Furthermore, the Court finds little persuasive authority in the HCFA letters cited by the Defendant in support of its argument that Jonathan is not entitled to the maintenance of services or the advance notice. *See 11/3/94 HCFA Letter*[11] *and 1/31/96 HCFA Letter*[12], *Included in Appendix to Defendant's Motion for Summary Judgment.* The Court is not required to afford weight to the HCFA letters cited by the Defendant. Although administrative interpretations are entitled to consideration under both federal and state law, the Court is not required to follow them. *See*

---

[11] According to Defendant's Appendix to its motion for summary judgment, the November 3, 1994, letter was sent by Steve McAdoo, Chief of Program Operations Branch, Division of Medicaid, to Ms. DeAnn Friedholm, State Medicaid Director for the Texas Health and Human Services Commission at the time. In the letter, Mr. McAdoo makes the follow relevant statements: "It is HCFA's position that a 10-day advance notice is not required when an initial request for prior authorization is denied. Such denials are comparable to applications for eligibility. These requests are for services which have not been provided at the time of the request. Therefore, advance notice and continued services pending an appeal are inappropriate because nothing which the recipient has been receiving has been taken away, even though the opportunity to receive the service has been denied. However, while advance notice and continuation of the denied service are not required, notice of denial to the recipient must be given in accordance with 42 C.F.R. § 431.210, and the right to request a hearing must be provided in order to permit the recipient to establish the medical necessity of receiving the denied service.. . .When a recipient, or a provider on behalf of a recipient, requests prior authorization to continue the same service previously authorized , this request constitutes a "claim for assistance" as that term is used in 42 C.F.R. § 431.200. Here again we believe that the state is not required to provide both the 10-day advance notice and continuation of the service pending a hearing should the recipient request a hearing. Although the recipient has been receiving a covered service, it is a limited service in that the approval was for a limited period of time. Thus, a continuation request for prior authorization is no different than an initial request for prior authorization in terms of the advance notice and continuation of service requirements.. . Recipients, or providers on behalf of the recipients, may be able to avoid interruption of services by requesting additional prior authorizations as soon as the need for additional treatment is apparent or as soon as possible. Moreover, we view only a partial approval of a request for a course of treatment under the prior authorization process as a denial which triggers the right to a hearing under § 431.220(a)(1). A recipient under these circumstances could request a hearing well in advance of the conclusion of the approved course or treatment in order to avert an interruption in services."

[12] Similarly, the January 31, 1996, letter was sent to state agencies administering approved medical assistance plans, by Bart Lacey, Program Operations Branch, Division of Medicaid, with the Dallas Regional office for the HCFA. In sum, the 1/31/96 letter also sets forth the finding that states are not required to maintain services pending a hearing on denied re-authorization requests.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43(1984); *Salazar-Regino v. Trominski*, 415 F.3d 436, 443 (5th Cir. 2005) (Citing *Moosa v. INS*, 171 F.3d 994, 1005 (5th Cir. 1999)); *Firestone Tire & Rubber Co. v. Bullock*, 573 S.W.2d 498, 500 n.3 (Tex. 1978). Even the Defendant's motion contends that the Court "*may* accord deference to HCFA's interpretation" of the notice and maintenance aspects of the Medicaid Aid, citing the *Chevron* case in support. *See Motion for Summary Judgment*, at p.19 (emphasis added).

However, *Chevron* deference "is only warranted when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Gonzales v. Oregon*, _____ U.S._____, 126 S. Ct. 904, 914-15 (2006) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001)). Otherwise, the agency's interpretation is entitled to respect only the extend that it has the power to persuade. *Gonzales*, at 915 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). *Chevron* deference is also only afforded when interpreting ambiguous rules or statutes. *See Gonzales*, at 914-15. If a statute is involved and its meaning is unambiguous, this Court must give effect to the intent of Congress as enunciated in the statute. *See Louisiana Dep't of Health & Hosps. v. Center for Medicare & Medicaid Servs.*, 346 F.3d 571, 576 (5th Cir. 2003) (citing *Chevron*, 467 U.S. at 842).

The parties do not allege that the Federal Medicaid statute or the corresponding regulations are ambiguous. They also have not presented any authority indicating that the HCFA was delegated with making rules which carry the force of law.

Further, the Sixth Circuit Court of Appeals has recently held that a letter such as the ones presented to the Court in this case were not entitled to deference. *See Spectrum Health Continuing Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir. 2005). In reaching this

-28-

decision, the Sixth Circuit took into account the fact that the letter was not listed on the website for the Centers for Medicare & Medicaid Services (the successor to the HCFA), nor published elsewhere. *Id.* at 318. Upon research, this Court finds that the same statement applies in this case to the letters presented by the Defendant in support if its motion for summary judgment. *See* http://www.cms.hhs.gov/SMDL/SMD/list.asp (listing agency letters issued to state Medicaid Directors, dating to December, 1994 through September, 2006). As the Sixth Circuit stated in *Spectrum Health*, this Court believes that heavy reliance on the cited HCFA opinion letter in the face of clear statutory and regulatory language is misplaced. *See id.* "Indeed, the lack of public availability alone raises doubts about whether this [twelve] year old opinion letter is still the policy of the federal government. *Id.* at 318-19.

The Spectrum Health case goes on to state that "moreover, the agency's letter is not entitled to judicial deference. The letter does not appear to be a product of the agency's rule-making authority, and therefore was likely not subject to the rigors of the public notice-and-comment process." *Id.* Citing *United States v. Mead Corp.*, 533 U.S. 218, 230, 150 L. Ed. 2d 292, 121 S. Ct. 2164 (2001) (holding that agency action resulting from notice-and-comment rule-making or formal adjudications is entitled to judicial deference)). Likewise, nothing in the Medicaid statutory scheme reveals that Congress intended that courts defer to the agency's opinion letters. *Id.* Citing *Mead Corp.*, at 231 (noting that the absence of administrative formality does not necessarily bar judicial deference if Congress intended informal interpretations to have the force of law). Instead, as the Supreme Court has held, "interpretations such as those in opinion letters -- like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law -- do not warrant *Chevron*-style deference." *Id.* Quoting *Christensen v. Harris County*, 529 U.S. 576, 587, 146 L. Ed. 2d 621, 120 S. Ct. 1655 (2000); *Wis. Dep't of Health & Family Servs.*

-29-

*v. Blumer*, 534 U.S. 473, 497, 151 L. Ed. 2d 935, 122 S. Ct. 962 (2002) (holding that the HCFA's interpretation of a federal statute outlined in a regional letter to state directors as well as a proposed rule only "warrants respectful consideration"). The sole exception to this rule is where an agency is seeking to interpret its own regulation, and the language of that regulation is ambiguous. *Id.*  Citing *Christensen*, 529 U.S. at 588.

As discussed above, in this case there is nothing ambiguous about the language of the federal regulations, which require compliance with *Goldberg v. Kelly*, informing the recipient of the right to a hearing, and  the 10 days advance notice. *See* 42 C.F.R. §§ 431.206, 431.210 and 431.211. Moreover, the cited November 3, 1994, opinion letter does not serve to clarify the language of that regulation. Instead, the letter simply sets forth HCFA's "beliefs" as to when and how the regulations should apply, in essence creating a new rule that "advance notice and continued services pending an appeal are inappropriate because nothing which the recipient has been receiving has been taken away, even thought the opportunity to receive the service has been denied." *See 11/3/94 HCFA Letter, Included in Appendix to Defendant's Motion for Summary Judgment.* In construing the letter, upon which the Defendant relies heavily, the Court finds that to defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation. *See Spectrum Health*, at 319 (internal citations omitted).  In sum, because federal law clearly requires that Jonathan receive the advance notice and that he be entitled to continuation of services pending appeal, this Court declines to follow the Defendant's approach as outlined in the 1994 and 1996 HCFA letters. *See id.*   Moreover, given the extremely detailed nature of the Medicaid scheme and the frequency with which it is amended, reliance upon a twelve year-old opinion letter which is not easily accessible to the public, including recipients such as Jonathan,  is unwarranted. If state Medicaid providers opt to create their own internal regulations which contrast

-30-

with or go beyond the scope of the federal Medicaid regulations, it is solely within the province of Congress to permit such action. In the meantime, the Court must adhere to the clear language of the statute and the accompanying regulations. *Spectrum Health*, at 319-310. Accordingly, this Court concludes that Texas Medicaid violates Jonathan's constitutional rights to due process and the federal Medicaid Act's requirements of advance notice and fair hearings before the denial or reduction of services. Therefore, Jonathan is entitled to summary judgment on his claims.

d). The Timeliness Issue - Jonathan's Failure to "Appeal"

Finally, in its motion, the Defendant contends that even if its  notices to Jonathan were deficient, "this issue is moot because Plaintiff did not attempt to follow through with the November 2, 2004 hearing, failed to appeal the January 14, 2005, denial, and was successful at the November 22, 2004 fair hearing." *See Defendant's Motion for Summary Judgment*, at p.21. This Court finds this statement to be rather disingenuous, and, accordingly, disagrees.

As the Court already stated, the fair hearing official's decision is considered the final administrative decision of the agency. 1 TEX. ADMIN. CODE § 357.305(a). However, an individual may challenge the decision of the hearing officer by mailing a request for *administrative review* within 30 days of the date of the hearing officer's decision to the appropriate regional attorney. 1 TEX. ADMIN. CODE § 357.305(b) (emphasis added). Accordingly, pursuant to Texas' medical fair hearing rules, there is no process for judicial review of a hearing officer's final decision to deny or reduce benefits. The Defendant provides no statute or case law holding that the fair hearings process has in place a requirement that certain administrative remedies be exhausted. The "administrative review" set forth in Section 357.305(a) speaks directly to the "DHS", or the Texas Department of Human Services, which  was not responsible for the denial of benefits in Jonathan's case. The Texas Health and Human Services Commission has been designated as the single state agency in-charge

-31-

of the Texas Medicaid program, and is, therefore, ultimately responsible for any unlawful denial of Medicaid benefits *See Fred C. v. Texas Health and Human Servs. Comm'n*, 988 F. Supp. 1032, 1034 n.2 (W.D. Tex. 1997).

Finally, even if Jonathan had followed through with the earlier hearing or "appealed" the January 14, 2005, denial, this still would not address the defects in Defendant's fair hearing system as they applied to him. In fact, he prevailed on the first authorization request at issue when he sought review at the hearing level, but his rights were still violated by the procedures in place, as discussed herein. The Court, therefore, does not follow, much less accept, Defendant's argument that Jonathan somehow "waived" any claims by failing to follow through with his requests by initiating some type of administrative review.

### C.    Conclusion of the Court

For the reasons stated herein, and as previously ordered by the Court[13], Defendant's *Motion to Dismiss and for Summary Judgment* [Clerk's doc. #22] is **DENIED**, and Plaintiff's *Motion for Summary Judgment* [Clerk's doc. #23] is **GRANTED**.  Having considered the pleadings, evidence, and arguments submitted by the parties, the Court concludes that no issue of genuine material fact exists on Jonathan's claim that Defendant has deprived him of his entitlement to benefits without due process of law and in violation of federal Medicaid law.  Summary judgment is entered in favor of the Plaintiff, Jonathan C., on his claims against the Defendant.

This Court accordingly **FINDS** and **ORDERS** that Defendant has deprived Jonathan of his entitlement to the Medicaid benefits discussed herein without due process of law, and enjoins

---

[13]*See Order on Motions for Summary Judgment* [Clerk's doc. #47].

Defendant from further depriving Plaintiff in violation of federal law.  The Court will enter final

judgment separately.

SIGNED this the 5  day of **December, 2006.**


Thad Heartfield
United States District Judge